### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

MAHOGANY D. GREER                                 )
        Plaintiff,                               )
    vs.                                            )    Case No.: 2:17-cv-2001
                                         )
APRIA HEALTHCARE GROUP INC.,                      )
SERVE: National Registered Agents, Inc. of KS     )
    112 SW 7th Street, Suite 3C                 )
    Topeka, Kansas 66603                        )
                                         )
           Defendant.                            )

### COMPLAINT AND DEMAND FOR JURY TRIAL
### AND DESIGNATION OF PLACE OF TRIAL

COMES NOW, Plaintiff Mahogany D. Greer ("Plaintiff Greer") and, by and through undersigned counsel, files the following Complaint against Defendant Apria Healthcare Group Inc. ("Apria"):

### PARTIES.

1.      Plaintiff Greer is an individual residing in Jackson County, Missouri.

2.      Plaintiff Greer worked at Apria Healthcare Group Inc. at the Overland Park, Kansas location.

3.      Defendant Apria is a Delaware corporation in good standing within the law of the State of Kansas, doing business in the State of Kansas, with its principal place of business at 26220 Enterprise Court, Lake Forest, California 92630-8405.

4.      Defendant Apria may be served with process by service thereof upon National Registered Agents, Inc. of KS., at 112 SW 7th Street, Suite 3C., Topeka, Kansas 66603.

5.      Defendant Apria is an "employer" within the meaning of Title VII, K.S.A. §44-1001, et seq.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 1 of 28

6.      During calendar years 2014 and 2015, for each working day during each of 20 or more calendar weeks, Defendant Apria employed 50 or more employees within a 75-mile radius of Plaintiff Greer's location of employment.

7.      Defendant Apria had at least 15 employees at all relevant times.

8.      This is an action for discrimination in violation of Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA") and for violation of the Family Medical Leave Act ("FMLA").

## JURISDICTION AND VENUE.

9.      This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343, 42 U.S.C. Section 1981 and 42 U.S.C. Section 2000e-5, in as much as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., the Americans with Disabilities Act, as amended in 2008 ("ADA"/"ADAA"), 42 U.S.C. Section 12101 et seq., and the Family Medical Leave Act ("FMLA"). This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f) and 28 U.S.C 1391 (b)(1).  The Court may exercise jurisdiction over Plaintiff's state law claims under 28 U.S.C. Section 1367. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law which rights provide for injunctive relief and other relief for illegal employment discrimination.

10.     The amount in controversy in this action exceeds the jurisdictional limits of this Court.

11.     Venue is proper in that Defendant is located within this District and the acts complained of took place within this District.

12.     On or about November 11, 2015, Plaintiff Greer filed a Charge of Discrimination that was dually filed with the Kansas Human Rights Commission ("KHRC") and the Equal Employment

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 2 of 28

Opportunity Commission ("EEOC") alleging discrimination based upon race, color, sex, ancestry, disability and retaliation.

13.    The aforesaid Charge of Discrimination provided the KHRC and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the KHRC or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

14.    On or about July 18, 2016, the KHRC issued its finding and Investigative Case Summary for Plaintiff Greer's complaint of discrimination, KHRC Case No. 38307-16.

15.    On or about October 5, 2016, the EEOC issued Plaintiff Greer her Notice of Right to Sue Letter pertaining to her complaint of discrimination on Charge No. 28D-2016-00082. A true and accurate copy of Plaintiff Greer's Notice of Right to Sue Letter dated October 5, 2016 is attached hereto as **Exhibit "A"**.

16.    Plaintiff Greer has filed her lawsuit within 90 days of her receipt of her "Dismissal and Notice of Rights" from the EEOC.

17.    Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL COUNTS.

18.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

19.    Plaintiff Greer is an African-American, black female.

20.    Plaintiff Greer has a disability, has a history of disability and/or was regarded as disabled by Defendant Apria.

21.    In or about 2012, Plaintiff Greer was diagnosed with depression and anxiety.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 3 of 28

22.    At the time of her diagnosis and up to approximately March 2015, Plaintiff Greer was able to manage her depression and anxiety without medication.

23.    At all times, relevant hereto, Plaintiff was employed by Defendant and was last employed by Defendant as a sales representative for Sleep Central.

24.    Between March 10, 2014 to June 10, 2015, Plaintiff Greer was employed by Defendant Apria as a sales representative.

25.    Plaintiff was paid approximately $16.68 per hour with the opportunity to earn commissions and bonuses.

26.    In or about March 2015, Plaintiff Greer sought additional medical treatment for her depression and anxiety due to stress caused by Defendant's workplace.

27.    On or about March 1, 2015, a new manager, Erica Weese, began her employment with Defendant Apria. Erica Weese was the Area Customer Service Manager.

28.    On or about March 10, 2015, Plaintiff Greer complained to Ethics Point, Defendant Apria's telephone contact for employee complaints, that she was being discriminated against based upon her race and color by her new manager, Erica Weese.

29.    Plaintiff Greer, among other things, complained that Defendant Apria overly scrutinized the work of persons that were African American and/or black and/or not Caucasian

30.    Plaintiff Greer further complained that Defendant Apria had different standards for Caucasian employees.

31.    Plaintiff Greer received no response to her complaint of discrimination to Ethics Point.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 4 of 28

32.    On or about March 31, 2015, Plaintiff Greer sent an email requesting a meeting to Human Resources Manager, Tamara Hull, to discuss the discrimination complaint she filed through Ethics Point.

33.    During the meeting, Plaintiff Greer again complained that she was being discriminated against based upon her race and color by her manager, Erica Weese.

34.    On or about April 2, 2015, Plaintiff Greer was working on the floor in her position of sales representative.

35.    Plaintiff Greer was assisting another employee on the floor by showing her how to enter her time.

36.    At that time, Plaintiff Greer's supervisor, Ayslin Clifford, approached Plaintiff Greer and told Plaintiff Greer that if she was clocked in, she was expected to process at least four (4) orders per hour.

37.    Plaintiff Greer clocked out at that time and went back to assisting the other employee with time entry.

38.    Supervisor Clifford, Plaintiff Greer's supervisor, again approached Plaintiff Greer and told her that she must leave the floor after clocking out.

39.    Plaintiff Greer was unaware of any rule that required an employee to leave after clocking out, and asked Supervisor Clifford if a new rule had been put into place without notice.

40.    Supervisor Clifford insisted that Plaintiff Greer gather her things and leave the sales floor.  Supervisor Clifford followed Plaintiff Greer so closely, that she stepped on the heel of Plaintiff Greer's shoes when they arrived at Plaintiff's desk.

41.    Supervisor Clifford also immediately began to hyper-scrutinize Plaintiff and recommended that she be disciplined and/or terminated.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 5 of 28

42. Plaintiff Greer contacted her sister and advised her that she was being forced to leave the workplace.

43. Supervisor Clifford and manager, Tracy, stood over Plaintiff Greer in her work area while she gathered her things to leave.

44. The situation caused Plaintiff Greer extreme stress, anxiety and severe chest pains that resulted in Plaintiff Greer visiting the emergency room that night for evaluation and treatment.

45. Plaintiff Greer routinely clocked out at or around 5:00 pm based upon her hours, and then waited for her sister to pick her up and give her a ride home. Supervisor Clifford was aware of the arrangement. Plaintiff had never been told to leave the floor prior to this occasion.

46. By creating a scene and having Plaintiff Greer escorted off the property, Supervisor Clifford singled out Plaintiff Greer from the rest of her team.

47. A supervisor singling out an African American based on an assumption that she is not working both increases the feeling of isolation for that African American and is consistent with racial stereotypes about blacks being "angry", "dangerous", "lazy" or "slothful".

48. Making assumptions about an African American based on assumptions or racial stereotypes, particularly when that assumptions are made without objective facts to support them, or in direct opposition to objective facts, indicate very high levels of bias connected to that stereotype.

49. The monitoring of a black employee based on negative assumptions about that black employee, without objective reasons to make such assumptions, contributes to a hostile work environment.

50. Knowledge that skin color is part of the decision-process that leads to less favorable treatment in an employer alters the working conditions for the affected employee in violation of law.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

51.     The monitoring of a black employee based on racial bias or stereotype also contributes to a hostile environment by creating a "self-fulfilling prophecy". This is where the process of monitoring the black employee permits the biased supervisor to notice or locate minor errors or flaws in work performance to justify later criticism.

52.     This monitoring often requires the black employee to be "perfect" or feel that he or she cannot make any mistakes while observing his or her white coworkers engaging in a work environment where, like most employees, they are not monitored closely and/or are permitted to make small errors or mistakes without suffering adverse employment actions.

53.     Some African Americans are able to maintain this stressful work environment and some do not. If an African American can prove herself in such an environment, even a highly biased person may be willing to ease up on monitoring or hypercriticism, but only so long as the African American meets the heightened goals required by the operation of racial bias in the supervisor.

54.     The failure to follow up or investigate these concerns increased the racial hostility and provided tacit approval of the discrimination Plaintiff Greer had complained about.

55.     In March 2014, Supervisor Clifford began escalating her efforts to retaliate and to force Plaintiff to get in line or to resign. Supervisor Clifford even asked Plaintiff Greer if she was resigning.

56.     Defendant understands or should understand that this escalation is to be expected when the biased supervisor realizes that upper management or Human Resources intends to ignore the complaint or behavior of the manager or supervisor.

57.     Defendant understands or should understand that by failing to investigate Plaintiff Greer's allegations of discrimination it allowed Manager Weese and Supervisor Clifford to continue discriminating and/or retaliating against Plaintiff Greer.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 7 of 28

58.    Defendant understands that providing fair discipline and promotion unconnected to a person's race and/or disability is an important part of providing a work environment that is equal and not abusive or hostile.

59.    Defendant understands that its black employees come to work every single working day subject to the power of a supervisor to alter their working conditions tied to negative perceptions of race and because of that understanding expect their managers to exercise their authority without regard to race or other protected status.

60.    Defendant expects that its managers and supervisors will not alter the working conditions of blacks or other minorities based on negative perceptions of any minority group.

61.    On or about April 3, 2015, Plaintiff Greer contacted Human Resources Manager, Tamara Hull, and reported the incidents of the previous day.

62.    On or about April 24, 2015, Plaintiff Greer again contacted Tamara Hall regarding the April 2, 2015 incident and requested the procedure to file a formal complaint.

63.    On or about April 24, 2015, Plaintiff Greer again contacted Ethics Point, and again received no response.

64.    In or around April 2015, manager, Erica Weese, called Plaintiff Greer into her office and advised Plaintiff that she was changing her work hours from 7:30 am to 3:00 pm to 11:30 am to 8:00 pm. Plaintiff Greer advised Manager Weese that as a single-mother the proposed work schedule would be impossible for her. Manager Weese then asked Plaintiff Greer if she was resigning. Plaintiff Greer refused to resign. Plaintiff Greer was then forced to work from 9:30 am to 6:00 pm or be terminated.

65.     Between March 2015 and April 2015, Plaintiff Greer applied for multiple other positions with Defendant Apria. Plaintiff Greer applied for at least the following positions with Defendant Apria:

      a.     Team Lead;

      b.     Customer Quality Specialist;

      c.     Customer Quality Specialist Team Lead;

      d.     Team Lead, and;

      e.     Customer Service Representative.

66.     On each application submitted by Plaintiff Greer, a supervisor signed stating "I agree that the employee has been performing 100% of his/her job requirements at an acceptable level, and has been in his/her job position for 6 months."

67.     On or about March 16, 2015, Plaintiff Greer applied for a Customer Quality Specialist position. Defendant hired a Caucasian female.

68.     On or about March 17, 2015, Plaintiff Greer applied for a Team Lead position. Defendant alleges it did not hire anyone for the position.

69.     On or about March 18, 2015, Plaintiff Greer applied for a different Team Lead position. Defendant hired a Caucasian female.

70.     On or about March 30, 2015, Plaintiff Greer applied for a Customer Service Assistant Supervisor position. Supervisor Clifford signed the Internal Job Application on March 30, 2015 agreeing that Plaintiff Greer had been performing 100% of her job requirements at an acceptable level and had been in her position for 6 months. Defendant hired a Caucasian female.

71.     On or about March 30, 2015, Plaintiff Greer applied for a Customer Quality Specialist position. Supervisor Clifford signed the Internal Job Application on March 30, 2015 agreeing that

Plaintiff Greer had been performing 100% of her job requirements at an acceptable level and had been in her position for 6 months. Defendant alleges it hired an African American female.

72.     On or about April 2, 2015, Plaintiff Greer applied for a Customer Quality Specialist Team Lead position. Supervisor Clifford signed the Internal Job Application on April 2, 2015 agreeing that Plaintiff Greer had been performing 100% of her job requirements at an acceptable level and had been in her position for 6 months. Defendant alleges it did not hire anyone for the position and the position was canceled.

73.     On or about March 25, 2015, was the last date Plaintiff Greer was evaluated for her work performance.

74.     On March 25, 2015, Plaintiff Greer was given her Manager Review by Nathan Baker. Plaintiff Greer was rated as "Exceeds Expectations" meaning that Plaintiff Greer's "Performance meets all expectations and exceeds requirements in a number of key areas. A high level of skill is demonstrated. Contributions are significant, and performance adds value to the organization beyond what is expected. This is a possible candidate for promotion."

75.     Plaintiff Greer was never hired for any other position with Defendant Apria.

76.     Low numbers of blacks (below presence in the workforce and/or applicant flow numbers) in the workforce or in supervisory roles can be an indicator of the presence of racial bias.

77.     Low hiring, promotion and retention numbers for any protected class create feelings of isolation and increase the power and threat of any one employee or manager who acts negatively toward the minority based on their protected status.

78.     Plaintiff Greer's supervisors and managers were all white.

79.     During her employment with Defendant, Plaintiff Greer was never disciplined, either in writing or verbally.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 10 of 28

80.     In or about April 2015, Plaintiff Greer applied for leave under the Family Medical Leave Act ("FMLA") for her serious medical conditions of depression, anxiety and stress.

81.     Plaintiff Greer's FMLA leave was approved.

82.     Plaintiff Greer exercised her FMLA leave from April 20, 2015 through May 18, 2015.

83.     On or about May 18, 2015, Plaintiff Greer applied for intermittent FMLA leave.

84.     Plaintiff Greer's May 18, 2015 request for intermittent FMLA leave was approved.

85.     Plaintiff Greer exercised her intermittent FMLA leave, at least, three times between May 18, 2015 and June 10, 2015.

86.     Plaintiff Greer exercised her intermittent FMLA leave, at least, on May 21, 2015, May 26, 2015, and June 9, 2015.

87.     In or about May 2015, Plaintiff Greer met with Sleep Center Customer Quality Supervisor, Erica Weese, and Sleep Central Customer Quality Supervisor, Ayslin Clifford, to discuss Plaintiff Greer's medical condition. During that meeting, Plaintiff Greer explained that her medical condition causes her to experience anxiety and panic attacks. Plaintiff Greer explained that when she feels a panic attack starting, it helped for her to get up and walk around for a few minutes. As an accommodation for her disability, Plaintiff Greer asked that she be permitted to get up and walk around for a few minutes if she felt a panic attack begin.

88.     Both Erica Weese and Ayslin Clifford verbalized their understanding of Plaintiff Greer's medical condition and approved her accommodation allowing her to get up and walk around when she felt a panic attack beginning.

89.     In or about May 2015, after the meeting with Manager Weese and Supervisor Clifford, Plaintiff Greer felt the start of a panic attack. Plaintiff Greer stood up and began to walk around in

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 11 of 28

order to help control her panic attack. Plaintiff Greer was reprimanded for leaving her desk and walking around.

90.    Although Defendant Apria had approved Plaintiff Greer's request for accommodation, it reprimanded Plaintiff Greer the first time she used the accommodation.

91.    In or about June 2015, Plaintiff Greer was prescribed medication for treatment of her anxiety and depression.

92.    On or about June 5, 2015, Area Customer Service Manager, Erica Weese, called Plaintiff Greer into her office. Manager Weese and Supervisor Clifford advised Plaintiff Greer that she was required to provide a doctor's note each and every time she exercised her FMLA intermittent leave regardless of the length of time she was absent.

93.    Plaintiff Greer contacted Leave of Absence Analyst, Ruth Koons, and requested a copy of the Defendant's FMLA policy.

94.    On or about June 8, 2015, Plaintiff Greer provided Manager Weese and Supervisor Clifford a copy of Ms. Koon's response regarding Defendant's FMLA leave policy.

95.    On or about June 10, 2015, Plaintiff Greer was terminated.

96.    Plaintiff Greer was diagnosed with a serious medical condition.

97.    Defendant Apria was aware of Plaintiff Greer's serious medical condition.

98.    Plaintiff Greer could perform the essential functions of the job with or without a reasonable accommodation, and, in fact, she was doing so at the time of her termination.

99.    During Plaintiff Greer's FMLA leave in or about April 2015 through May 2015, Defendant Apria changed its call procedure.

100.    When Plaintiff Greer returned from FMLA leave on May 19, 2015, she was not trained on the new call procedure.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

101.    When Plaintiff Greer returned to work on May 19, 2015.  Plaintiff was not trained on the new call procedure; however, she took customer calls and performed the essential functions of her job without complaint by customers or co-workers.

102.    Plaintiff Greer was not trained on the new call procedure on May 20, 2015; however, she took customer calls and performed the essential functions of her job without complaint by customers or co-workers.

103.    Plaintiff Greer was not trained on the new call procedure on May 21, 2015, however, she took customer calls and performed the essential functions of her job without complaint by customers or co-workers.

104.    After Plaintiff Greer's additional, efforts to report the behavior of her supervisor and after she was again, put off or ignored, additional escalation or continuation of the retaliation was to be expected and should have been expected by Defendant.

105.    On or about June 10, 2015, Plaintiff Greer was called into a meeting with Manager Weese and Supervisor Clifford. During the meeting, Manager Weese claimed Plaintiff Greer did not have active listening skills. During the meeting, Manager Weese and Plaintiff Greer listened to a recording of one phone call that Manager Weese claimed illustrated Plaintiff Greer's lack of active listening skill.

106.    The recording included a telephone call with a customer that had already spoken to between five (5) and six (6) other customer service representatives. None of the prior representatives were able to help the customer; however, Plaintiff Greer was the only employee disciplined for the call.

107.    The purpose of the meeting on June 10, 2015, ignoring Plaintiff's complaints and refusing to investigate her complaints was to either paper the file of Plaintiff Greer to justify her

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 13 of 28

termination or to get her to resign prior to the destruction of her career by suffering a termination from her employer.

108.    On June 10, 2015, without any warning, Plaintiff Greer was terminated.

109.    On or about June 10, 2015, Plaintiff Greer was terminated from her job due to retaliatory complaints she purportedly received after making protected complaints of discrimination and taking protected leave, in addition to the amount of stress she endured.

110.    Plaintiff Greer's termination was a direct result of Defendant's omissions and failure to address any of her complaints of discrimination and/or retaliation.

111.    Defendant understands that a decision adverse to a black employee tied to negative perceptions of race, by a person with continued supervisory power over that black employee can create an abusive work environment.

112.    Defendant understands that a decision to treat a black employee less favorably in any way connected to race creates fear and threat of discipline and unfair treatment, and alters the work environment more directly and more severely than use of racial jokes or slurs.

113.    Defendant understands that a supervisor who uses her power to alter the work environment by engaging in decisions that adversely affect the enjoyment of the work environment by a black employee creates a work environment that is hostile and abusive.

114.    Although Plaintiff Greer was on FMLA leave from April 20, 2015 to May 18, 2015, Defendant claims to have provided "supportive coaching on multiple occasions between April 1, 2015, and May 22, 2015" to her.

115.    Plaintiff Greer worked at least 1,250 hours per year and qualified for FMLA leave.

116.    At all relevant times, Plaintiff Greer was meeting all of the legitimate expectations of her job.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 14 of 28

117.    Plaintiff Greer had a right for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

118.    Plaintiff Greer qualified for FMLA leave while employed by the Defendant.

119.    Plaintiff Greer was approved to take continuous FMLA for her own serious medical condition from April 20, 2015 through May 18, 2015.

120.    Plaintiff Greer was approved to take intermittent FMLA leave for her own serious medical condition from May 19, 2015 through December 31, 2015.

121.    At no other time prior to her termination was Plaintiff Greer ever told that she was having any issues successfully performing her job.

122.    At the time of her termination, Plaintiff Greer was not allowed to see any termination paperwork that outlined the reasons for her termination.

## COUNT I
## VIOLATION OF FMLA AGAINST DEFENDANT.

123.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

124.    Plaintiff incorporates by reference the foregoing paragraphs.

125.    The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right pursuant to the FMLA.

126.    Defendant is an employer within the meaning of the FMLA.

127.    Plaintiff Greer was eligible for and entitled to benefits under the FMLA.

128.    Defendant interfered with, restrained, and denied Plaintiff Greer's exercise, and attempted exercise, of rights pursuant to the FMLA by interfering with her attempts to use leave and then terminating her employment for taking leave.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

129. Defendant retaliated against Plaintiff Greer for her exercise and attempted exercise of FMLA rights by terminating her employment.

130. Defendant was an "employer" as that word is defined at 29 U.S.C. Section 2611(4)(A)(i).

131. Defendant was a "person" as that word is defined at 29 U.S.C. Section 2611(8).

132. Defendant was at all times material hereto engaged in "commerce" or was engaged in an "industry or activity affecting commerce," as that word and phrase are defined in 29 U.S.C. Section 2611(1) and at 29 U.S.C Section 142(1) and (3), as made applicable by 29 U.S.C. section 2611(1).

133. Plaintiff was an "eligible employee" as that phrase is defined by 29 U.S.C. Section 2611(2)(A)(i) and (ii).

134. Defendant interfered with, restrained and/or denied the exercise by Plaintiff of her rights under 29 U.S.C. Section 2601, et seq. in violation of 29 U.S.C. Section 2615(a).

135. Defendant retaliated against Plaintiff for taking leave that she was entitled to pursuant to U.S.C. Section 2612(e)(2)(B).

136. Defendant willfully violated the FMLA and retaliated against Plaintiff when she returned after taking approved FMLA leave.

137. Defendant willfully violated the FMLA and retaliated against Plaintiff when she continued to be on approved intermittent FMLA leave.

138. Plaintiff Greer is entitled to all damages authorized by 29 U.S.C. § 2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, and equitable relief.

WHEREFORE Plaintiff Greer respectfully prays for judgment in her favor and against Defendant in the form of an order of this Court: (1) awarding her back pay in an amount yet to be determined; (2) awarding her front pay in an amount yet to be determined; (3) awarding her lost fringe

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 16 of 28

benefits in an amount yet to be determined; (4) awarding her liquidated damages in an amount yet to be determined; (5) awarding her the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting her claims of discrimination; (6); and (7) awarding such other and further relief as this Court deems just and proper.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA.

139.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

140.    Plaintiff incorporates by reference the foregoing paragraphs.

141.    Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit:

a.    a physical impairment, to wit: severe anxiety and depression, which substantially limits one or more of her major life activities, including, but not limited to: accomplishment of her daily routines of life; digestion; reading; comprehension; concentration; driving; and/or working;

b.    a record of such physical impairment; and,

c.    Defendant regarded Plaintiff as having such an impairment.

142.    Plaintiff is a qualified individual with a disability as defined by the Americans with Disabilities Act, to-wit: Plaintiff, with reasonable accommodation, is able to perform the essential functions of her employment position with Defendant.

143.    During her employment, Plaintiff made repeated verbal and/or written requests for reasonable accommodations for her disability including, but possibly not limited to, in March, April and May of 2015.

144.    Such reasonable requests included, but were possibly not limited to:  leave; time off; revised work schedules; periodic breaks.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 17 of 28

145.    Prior to the date of Plaintiff's termination, although Defendant stated Plaintiff Greer could get up from her desk for short periods of time in order to deal with her severe anxiety as a reasonable accommodation, Plaintiff was reprimanded for attempting to use the reasonable accommodation.

146.    In or about May 2015, Defendant reprimanded Plaintiff for using her reasonable accommodation.

147.    In or about May 2015, Defendant denied Plaintiff's requests for reasonable accommodations, failed to provide requested reasonable accommodations, withdrew previously agreed to reasonable accommodations.

148.    In or about May 2015, Defendant required Plaintiff to present medical releases for every single instance that she exercised her intermittent FMLA leave.

149.    While employed by Defendant, Plaintiff was excluded from participation in, denied the benefits of, and/or subjected to discrimination by Defendant, and by and through its agents, servants and/or employees, because of her disability, said acts including, but not limited to: failing to provide reasonable accommodations for Plaintiff's disability and/or withdrawing previously granted reasonable accommodations.

150.    While employed by Defendant, Plaintiff subjected to discrimination because of her disability by Defendant, and by and through its agents, servants and/or employees, said acts being made unlawful by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq, said acts including, but not limited to: failing to provide reasonable accommodations for Plaintiff's disability and/or withdrawing previously granted reasonable accommodations.

151.    Defendant engaged in said discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 18 of 28

152.    As a direct and proximate result of Defendant's violation of the ADA, as aforestated, Plaintiff has suffered aggravation of her disability and its symptoms, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

153.    As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff Mahogany Greer prays that this Court grant the following remedies:

a.    Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*,

b.    Award Plaintiff all lost wages, past and future, to which she is entitled;

c.    Award Plaintiff compensatory damages;

d.    Award Plaintiff punitive and exemplary damages;

e.    Award Plaintiff reasonable attorney's fees, costs, and interest;

f.    Award such other relief as this Court deems just and proper.

## COUNT III
## DISCRIMINATION IN VIOLATION OF THE ADA

154.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

155.    Plaintiff incorporates by reference the foregoing paragraphs.

156.    Defendant subjected Plaintiff to disparate treatment, harassment, and/or termination, as set forth herein, in whole or in part because of her disability and/or her requests for reasonable

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 19 of 28

accommodations for her disability, said acts being made unlawful by Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"/"ADAA").

157.    Defendant violated the aforementioned ADA, inter alia, by the following acts:

a.    Discharging or otherwise limiting, segregating, or classifying Plaintiff in a way that adversely affected the opportunities or status of Plaintiff because of her disability and/or requests for accommodation;

b.    Denying employment opportunities to Plaintiff based on the need of Defendant to make reasonable accommodations for Plaintiff's disability;

c.    Denying employment opportunities to Plaintiff because of her disability and/or requests for accommodation;

d.    Subjecting Plaintiff to disparate treatment and harassment on the basis of her disability and/or requests for accommodation;

e.    Creating and subjecting Plaintiff to a hostile environment on the basis of Plaintiff's disability and/or requests for accommodation.

158.    Defendant engaged in said discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.

159.    The Decision of Defendant to ignore the complaints of Plaintiff Greer and to not even investigate her concerns suggests awareness of the practice and approval of the practice that would warrant the imposition of punitive damages.

160.    As a direct and proximate result of Defendant violation of the ADA, as aforestated, Plaintiff has suffered aggravation of her disability and its symptoms, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 20 of 28

161.    As a further direct and proximate result of Defendant violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff Mahogany Greer prays that this Court grant the following remedies:

a.    Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*,

b.    Award Plaintiff all lost wages, past and future, to which she is entitled;

c.    Award Plaintiff compensatory damages;

d.    Award Plaintiff punitive and exemplary damages;

e.    Award Plaintiff reasonable attorney's fees, costs, and interest;

f.    Award such other relief as this Court deems just and proper.

## COUNT IV
## RETALIATION, INTERFERENCE, COERCION AND/OR INTIMIDATION IN VIOLATION OF THE ADA

162.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

163.    Plaintiff incorporates by reference the foregoing paragraphs.

164.    During the time Plaintiff was employed by Defendant, Plaintiff engaged in protected activity under the ADA, and KAAD to wit, Plaintiff opposed acts and practices made unlawful by the ADA, and KAAD including, but not limited to, failing to accommodate Plaintiff's disability, withdrawing previous accommodation(s) for Plaintiff's disability, and/or subjecting Plaintiff to

disparate treatment, harassment, and/or discrimination on the basis of her disability, as set forth herein.

165.    Defendant retaliated and discriminated against Plaintiff for engaging in said protected by activity, as set forth herein.

166.    During the time Plaintiff was employed by Defendant, she exercised and/or enjoyed rights granted and/or protected by the ADA, including, but not limited to, requesting and making use of reasonable accommodations for his disability, as set forth herein.

167.    Defendant coerced, intimated, and/or threatened Plaintiff on account of her having exercised and/or enjoyed rights granted and/or protected by the ADA, as set forth herein.

168.    Defendant interfered with Plaintiff in the exercise and/or enjoyment of rights granted and/or protected by the ADA, as set forth herein.

169.    As a direct and proximate result of Defendant' retaliation, interference, coercion and/or intimidation in violation of the ADA, Plaintiff has suffered aggravation of her disability and its symptoms, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

170.    As a further direct and proximate result of Defendant' retaliation, interference, coercion and/or intimidation in violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff Mahogany Greer prays that this Court grant the following remedies:

a.    Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*,

b.    Award Plaintiff all lost wages, past and future, to which she is entitled;

c.    Award Plaintiff compensatory damages;

d.    Award Plaintiff punitive and exemplary damages;

e.    Award Plaintiff reasonable attorney's fees, costs, and interest;

f.    Award such other relief as this Court deems just and proper.

## COUNT V
## DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. SECTION 1981

171.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

172.    Plaintiff incorporates by reference the foregoing paragraphs.

173.    Defendant's discriminatory practices violated Plaintiff Greer's rights to the full and equal enjoyment of all benefits, privileges, terms, and conditions of her employment.

174.    Defendant's creation of a hostile environment and the resulting discharge interfered with the rights to continued employment because of race or because of protected activity in violation of 42 U.S.C. 1981.

175.    Plaintiff Greer was discriminated against by Defendant Apria based on her race, which thereby impaired her contractual relationship with Defendant in violation of Section 1981.

176.    Plaintiff opposed the acts she believed in good faith violated Section 1981.

177.    Defendant illegally discriminated against Plaintiff Greer with regard to the terms and conditions of her employment on account of her race.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 23 of 28

178.    Plaintiff complained about the illegal discrimination and harassment and was subject to retaliation as a result of her complaint leading to her discharge from employment.

179.    Defendants acted with willful and wanton disregard for the equal rights of African American employees who worked for Defendants and engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

180.    As a direct and proximate result of Defendant's conduct, Plaintiff Greer sustained and will continue in the future to sustain damages in the form of lost income, emotional pain, suffering, mental anguish, inconvenience and loss of enjoyment of life.

WHEREFORE, Plaintiff Mahogany Greer prays that this Court grant the following remedies:

a.    Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of 42 U.S.C. Section 1981;

b.    Award Plaintiff all lost wages, past and future, to which she is entitled;

c.    Award Plaintiff compensatory damages;

d.    Award Plaintiff punitive and exemplary damages;

e.    Award Plaintiff reasonable attorney's fees, costs, and interest;

f.    Award such other relief as this Court deems just and proper.

## COUNT VI
## VIOLATION OF KANSAS ACT AGAINST DISCRIMINATION ("KAAD")

181.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

182.    Plaintiff incorporates by reference the foregoing paragraphs.

183.    Discriminatory and hostile conduct complained of constituted a continuing action from March 2015 to and after Plaintiff's termination.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

184.    Defendant illegally discriminated against Plaintiff and subjected her to a hostile work environment based on her race, color, national origin, gender and/or disability by way of offensive conduct, treatment and termination.

185.    On information and belief, the adverse actions and termination decision was retaliatory based on her protected complaint based on race, color, national origin, gender and/or disability.

186.    In addition, Plaintiff Greer complained about the illegally discriminatory hostile work environment in which she had worked, and after her complaint, Defendant subjected her to retaliation in the form of termination.

187.    Defendant treated other employees better, gave more favorable treatment to such employees based on the fact they did not share the same race, color, national origin, gender and/or disability as Plaintiff.

188.    Defendant's actions against Plaintiff were retaliatory in that after she engaged in activity protected under the KAAD, Defendant took tangible, adverse job actions against Plaintiff, including termination.

189.    Plaintiff was subjected to harassment, including, but not limited to, intense scrutiny of her work, disrespectful treatment, and degrading and humiliation comments.

190.    All actions or inactions of or by Defendant occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

191.    Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of the Kansas Act Against Discrimination as alleged herein.

192.    Plaintiff's race, color, national origin, gender and/or disability was a contributing factor in Defendant's discriminatory conduct against Plaintiff in violation of the Kansas Act Against Discrimination.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 25 of 28

193.    Plaintiff further believes that she was the victim of discriminatory conduct on the part of the Defendant that was ongoing and pervasive and constituted a "continuing violation" of her rights.

194.    As a direct result of the unlawful conduct of Defendant, as set forth herein, Plaintiff has suffered damages which include mental anguish, emotional distress, pain and suffering, a detrimental job record, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other nonpecuniary losses, all of a continuing and permanent nature.

195.    The conduct of Defendant was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

196.    Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, for all actual, compensatory and punitive damages, all costs, all expenses and attorneys' fees incurred herein, and all legal and equitable relief requested in this complaint.

## COUNT VII
### VIOLATION OF VIOLATION OF PUBLIC POLICY

197.    Plaintiff Greer hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

198.    Plaintiff incorporates by reference the foregoing paragraphs.

199.    Defendant violated public policy by engaging in discrimination and/or retaliation in violation of federal and state law.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 26 of 28

200.    Manager Weese, Plaintiff Greer's former manager, and Supervisor Clifford, Plaintiff Greer's former supervisor, supervised and had the power to discipline Plaintiff Greer.

201.    Plaintiff Greer complained to Defendant's Human Resources and Ethics Point. Plaintiff Greer was ultimately terminated because Defendant's Human Resources and Ethics Point failed to meaningfully address her complaints of discrimination and retaliatory behavior by Manager Weese.

202.    Defendant's termination of Plaintiff Greer violates public policy by discouraging other employees from complaining about unlawful discrimination.

203.    Defendant's termination of Plaintiff Greer violates public policy by discouraging other employees from complaining about unlawful retaliation.

204.    The Decision of Defendant to ignore the complaints of Plaintiff Greer and to not even investigate her concerns suggests awareness of the practice and approval of the practice that would warrant the imposition of punitive damages.

205.    Plaintiff Greer sought the benefits and protections of the FMLA.

206.    Kansas Courts recognize that termination of en employee for exercising federally protected rights.

207.    The Decision of Defendant to terminate Plaintiff Greer was unlawfully influenced by a desire to fire her as a result of her exercise of her rights.

208.    As a proximate result of Defendant' acts and omissions, Plaintiff Greer has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, insecurity, embarrassment, lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 27 of 28

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, for all actual, compensatory and punitive damages, all costs, all expenses and attorneys' fees incurred herein, and all legal and equitable relief requested in this complaint.

## REQUEST FOR JURY TRIAL.

Plaintiff Greer requests a jury trial on all claims asserted herein.

## DESIGNATION OF PLACE OF TRIAL.

Plaintiff Greer designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

/s/ Aaron C. McKee

Aaron C. McKee                KS # 20889
MCKEE LAW, L.L.C.
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@mckee-law.com
**ATTORNEY FOR PLAINTIFF**

*Mahogany Greer v. Apria Healthcare Group, Inc.*

Page 28 of 28

**Exhibit "A"**

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Mahogany Greer<br>8401 E. 92nd St.<br>Kansas City, MO 64138 | From: | St. Louis District Office<br>1222 Spruce Street<br>Room 8.100<br>Saint Louis, MO 63103 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 28D-2016-00082 | Joseph J. Wilson,<br>State & Local Program Manager | (314) 539-7816 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
James R. Neely, Jr.,
Director

October 5, 2016

(Date Mailed)

Enclosures(s)

cc:
Jenice Ayoola
Human Resources
APRIA HEALTHCARE GROUP,INC
6050 Sprint Parkway
Overland Park, KS 66211

Aaron Mc Kee
MCKEE LAW, L.L.C.
222 S. Cherry St.
Olathe, KS 66061